LILLIAN J. UPCHURCH v. STATE OF MISSISSIPPI.

[51 South. 810.]

CRIMINAL LAW AND PROCEDURE. *Witnesses. Interest of. Evidence to*
*show.*

Where, on the trial of a woman for the murder of her husband, her
stepchildren, decedent's children, were material witnesses against
her and testified that their statements, uttered just after their
father's death, to the effect that he had committed suicide were·
made by defendant's direction, it was reversible error to prevent.
defendant from showing that the witnesses had, since making
their statements, been informed that her conviction would entitle·
them to the proceeds of a life insurance policy on their father's.
life.

FROM the circuit court of Sunflower county.

HON. JAMES M. CASHIN, Judge.

Madame Upchurch, appellant, was indicted and tried for, and
convicted of murdering her husband, was sentenced to the
penitentiary for life and appealed to the supreme court.

The facts upon which the decision turned are stated in the
opinion of the court.

*Chapman & Quinn,* for appellant.

The Code of 1906, § 1923, provides that "any witness may be examined touching his interest in the cause," etc. In the cross-examination of the witness Pittman, the defense tried to show his interest in the conviction of appellant, Mrs. Upchurch, by proving that he was related by marriage to the deceased; that he, in connection with other relatives of the deceased, had employed counsel to prosecute the defendant, knowing or believing that if she were convicted of the crime with which she was charged, the insurance policies on the life of the deceased, which were payable to his widow, could be collected by the children of the deceased. To this line of testimony an objection, sustained by the court, was made by the state. Likewise the defense attempted to show the interest of the witnesses, Iva Upchurch, Alma Upchurch, and Bethel Upchurch, in the conviction of the defendant. Evidently it was fatal error to exclude from the consideration of the jury the interest of each of these witneses in the conviction of the defendant; she had a right, especially given her by statute, to have the jury know what interest those testifying against her had in the outcome of her trial, and this right was denied her by the court below; and when this right was denied her, she was then denied that fair and impartial trial according to law to which every person charged with crime in the state of Mississippi is entitled and she now demands at the hands of this court that she be given that right of which she was deprived by the court below. Who can say but that the verdict of the jury in this case would have been far different had they known that the deceased had policies of insurance on his life in the sum of $2,000 payable to his widow; that under the provisions of these policies, she could not recover one penny if she murdered her husband or if he committed suicide; that if she were proven guilty of murdering her husband, the children of the deceased who are the stepchildren of the defendant would obtain the

proceeds of the insurance;-that the witness Pittman, who mar-
ried a niece of the deceased, knew or believed this to be true,
being so advised by his counsel, Mr. Stone, and was making
every effort in his power to have her convicted, and that the
children of the deceased, Iva, Alma, and Bethel, knew or
believed that on the conviction of their stepmother, they would
get the insurance money on their father's life? It was the
right of the defendant to have all these facts before the jury
in order that they might be weighed in making up their ver-
dict. Who knows but that all these matters would have ex-
plained to the entire satisfaction of the jury the vast discrep-
ancies between the statements made to neighbors by the children
of the deceased, and their testimony at the coroner's inquest,
and about the manner in which he came to his death, and their
testimony in this trial; that the jury would have concluded
that the venal disposition of Pittman had prompted him, or
some of his relatives, to pour into the minds of the children of
the deceased the poison of avarice and rapacity, inciting them
to change their story of what they saw from the statements
made by them to what they testified to on the trial of this
case, which latter are diametrically opposed to the former; and
that the child, Alma, had been influenced by these mercenary
motives to testify as she did about the conduct of appellant and
Currie on the night after the deceased was shot? Only a
jury can answer this query, and the defendant asks that she be
given the right of having a jury pass upon all of the material
facts of her case, which right was denied her at her former
trial.

*George Butler,* assistant attorney-general for appellee.

The record discloses that deceased had his life insured for
his wife for some $2,000, and it is suggested that if it could
be shown that she murdered her husband she could receive no
benefit from the insurance. This fact was brought out by
counsel himself on cross-examination, and was not injected

into the case by the state for the purpose of showing any motive
for the killing. It, of course, was not permissible to inquire
of Pittman with reference to a conversation had between him
and Stone in regard to the insurance policy on the grounds
that counsel now claim, because that did not show or tend to
show that Pittman had any pecuniary interest in the insur-
ance; and the questions to Iva, Alma, and Bethel Upchurch
did not go to the point of pecuniary interest, but, as above
stated, was injected by defendant into the case for the purpose
of building up a strawman-motive, and then tearing it down
by showing that under the terms of the policy in question,.
if she murdered her husband she would be precluded from
taking, or receiving and enjoying the benefits. It is always
competent, of course, as affecting credibility, to show the wit-
ness' interest in the case, but the proper way to do this is to
ask them if they were interested, and then, if they deny that
they were, to prove by evidence *aliunde* that they were inter-
ested; but this question was never asked these witnesses, and
they were never given any chance to state whether they were
or were not interested. On the contrary, every effort was made
to inject the conversation between counsel and these children
into the case for the purpose, as above stated, of apparently
furnishing the motive for the killing and then disproving the
weight of that testimony by showing that appellant could not
take under the terms of the policy.

MAYES, J., delivered the opinion of the court.

The accused is the stepmother of several children of deceased,
and is charged with the assassination of their father and her
husband. Several of these stepchildren were introduced as
witnesses by the state, and their testimony is of a most damag-
ing character. The theory of the defense is that deceased was not
killed, but suicided, and it is shown that these same witnesses so
stated when first interviewed; but on the trial of the case, while
admitting that they had first said that their father killed him-

self, they claim that they so stated because their stepmother had told them so to do. It is shown that since tthe killing these children have had frequent converse with the relatives of the deceased, and the theory of the defense is that these relatives have caused this change in the testimony of these children. It appears that deceased had a life insurance policy in favor of accused, his wife, and the defense attempted to ask these witnesses about this insurance policy, and to show as a motive for this change in their statement as to how the killing occurred that the relatives of deceased had told these children that they would be the beneficiaries under the policy in case they were successful in convicting their stepmother of the crime charged. This testimony was objected to by the state and excluded.

The exclusion of this testimony was in the highest decree prejudicial to the rights of accused. These same witnesses had stated facts contradictory to the testimony they were then giving, which facts exculpated, and proved the innocence of the accused, if true. They had stated that their father killed himself when first interrogated about it, and they had sworn to this at the coroner's investigation. When asked on the stand if they did not say that their father killed himself, they admit saying it, but now say that they said it because accused told them to say that. At all events, they have changed their testimony from their former statements, and the accused should have been allowed to show any facts that might tend to prove why they had changed. She attempted to do so by showing that they were made aware of the fact that if she was convicted it meant a pecuniary benefit to them; it meant that the fruits of the policy of insurance would go to them, instead of their stepmother, for whom they seem not to have much affection. This testimony tended to show why there had been so remarkable a change in their statements about this killing, and should have been admitted.

*Reversed and remanded.*